IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| FRED E. BARDO | : | BANKRUPTCY NO.: 5-06-bk-51065 |
| LISA M. BARDO, | : | |
|     DEBTORS | : | |

# OPINION

An Objection to the Debtors' Chapter 13 Plan has been filed by the standing Trustee and an unsecured creditor, eCast Settlement Corporation. The Trustee's Objection is currently subject to settlement discussions, but the Objection of eCast raises fundamental issues of interpretation with regard to a certain BAPCPA amendment as well as factual issues addressing the reasonableness of various expenses.

The overarching issue is the meaning of the term "projected disposable income" as used in 11 U.S.C.A. § 1325(b)(1)(B).[1] That subsection requires that there be a minimum payment made to unsecured creditors based on the debtors' projected disposable income. To some extent, our task is made simpler by the definition of the phrase "disposable income" in 11 U.S.C.A. § 1325(b)(2), as follows:

---

[1] (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
11 U.S.C.A. § 1325

[m:\users\cathy\opinions\5-06-bk-51065_Bardo.wpd]

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C.A. § 1325(b)(2)

The term, "current monthly income" is also a defined phrase under the Code. The definition can be found in 11 U.S.C.A. § 101(10A) and reads:

> (10A) The term "current monthly income"--
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint

case the debtor's spouse if not otherwise a dependent), but excludes benefits
received under the Social Security Act, payments to victims of war crimes
or crimes against humanity on account of their status as victims of such
crimes, and payments to victims of international terrorism (as defined in
section 2331 of title 18) or domestic terrorism (as defined in section 2331 of
title 18) on account of their status as victims of such terrorism.

11 U.S.C.A. § 101

The conclusion is rather inescapable that "disposable income" is based on a mathematical analysis of historic income figures.

Returning to 11 U.S.C.A. § 1325(b)(1), it becomes apparent that, when confronted with an objection, a debtor must either pay all claims in full or dedicate sufficient funds to the plan as measured by so much of "disposable income" as is received during the applicable commitment period.[2]

On its surface, there appears to be little room for dispute as to the meaning of the various terms. That is, very much, not the case. A significant body of case law has developed premised on the conclusion that Congress could not have possibly meant to refer to the definition of "disposable income" when discussing "projected disposable income." This seems hardly possible. First, disposable income is defined "for purposes of this subsection." The only place in the subsection that the term is utilized is in reference to projected disposable income. Second, the term disposable income is defined differently in § 1225(b)(2) of the Code for specific application in that *subsection*. This lends weight to the conclusion that these alternative definitions were purposeful and

---

[2] The term "applicable commitment period" is also a term of art, defined in 11 U.S.C.A. § 1325(b)(4). An explanation of this term is not pivotal in disposing of this case.

[m:\users\cathy\opinions\5-06-bk-51065_Bardo.wpd]   3

designed for specific application. Third, in 2005, Congress specifically amended the definition of "disposable income" in § 1325(b)(2) from "income which is received by the debtor and which is not reasonably necessary to be expended - (A) for the maintenance or support of the debtor or a dependent of the debtor . . . ." This alteration of the definition of disposable income speaks to a conscious choice by Congress to move away from a "forward-looking" assessment of income to a historic analysis. This option may certainly be controversial, but it also lacks the absurdity necessary for a court to be authorized to rewrite the statute.[3] Still, the volume of case law in disagreement is impressive.

The argument that there exists some ambiguity in this interpretation has been initially raised by *In re Hardacre*. *In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex. 2006). The *Hardacre* court, unhappy with the prospect of relying on historical income records in determining minimum creditor payouts, appears to have disregarded Congress' carefully chosen definition for "disposable income" in § 1325(b)(2) in favor of embracing the more "forward-looking" definition utilized in that section, prior to the amendment. The perceived "ambiguity" was based on alternate interpretations of the word "projected" and the "serious consequences" implicated if minimum distributions were based on historical averages rather than anticipated income. In short, the *Hardacre* court concluded that there was a basic unfairness to debtors and creditors in requiring past income information

---

[3] "If Congress has mistakenly disguised its actual intent by incorporating language pointing in a different direction, it is not up to us to rewrite the statute unless, perhaps, a literal reading produces a truly absurd result." *Napotnik v. Equibank & Parkvale Savings Ass'n*, 679 F.2d 316, 321 (3d Cir. 1982), citing to *Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

to dictate minimum payment requirements.

The *Hardacre* position has been embraced by a number of courts, including *In re Kibbe*, 361 B.R. 302, 308 (1st Cir.BAP(N.H.) 2007); *In re Arsenault* --- B.R. ---, 2007 WL 1956277, (Bkrtcy.M.D.Fla. 2007); *In re Meek*, 2007 WL 1830817 (Bankr.D.Idaho June 27, 2007); *In re Lanning*, Case No. 06-41037 (Bankr.D.Kan. May 15, 2007); *In re Edmunds*, 350 B.R. 636, 643-44 (Bankr.D.S.C. 2006); *In re Devilliers*, 358 B.R. 849, 2007 WL 92504 (Bankr.E.D.La., January 9, 2007); *In re Grant*, No. 06-32299, 2007 WL 858805 (Bankr.E.D.Tenn. March 19, 2007); *In re LaPlana*, 2007 WL 431627 (Bankr.M.D.Fla. Feb. 9, 2007); *In re Edmondson*, 363 B.R. 212, 215-17 (Bankr.D.N.M. 2007); *In re Clemons*, No. 05-85163, 2006 Bankr.Lexis 1366 (Bankr.N.D.Ga. June 1, 2006); *In re Watson*, No. 06-11948, 2007 WL 1086582 (Bankr.D.Md. April 11, 2007); *In re Foster*, No. 05-50448 HCD, 2006 WL 2621080, *5 (Bankr.N.D.Ind. Sept.11, 2006); *In re Pak*, 357 B.R. 549, 552-53 (Bankr.N.D.Cal. Dec.14, 2006); *In re Casey*, 356 B.R. 519, 522-3 (Bankr.E.D.Wash. 2006); *In re Bossie*, 2006 WL 3703203, slip op. at *2 (Bankr.D.Alaska Dec. 12, 2006); *In re Jass*, 340 B.R. 411, 415-16 (Bankr.D.Utah 2006); *In re Grady*, 343 B.R. 747, 750-51 (Bankr.N.D.Ga. 2006); and *In re Dew*, 344 B.R. 655 (Bankr.N.D.Ala. 2006).

While a considerable number of cases have embraced the *Hardacre* interpretation, a similar number have rejected it. *In re Austin*, 2007 WL 2264062, *6 (Bankr.D.Vt. 2007); *In re Vaughn*, 1-06-bk-00788MDF (Bkrtcy.M.D.Pa. 2007); *In re Berger*, 2007 WL 1704403, *2 (Bkrtcy.M.D.Ga. 2007); *In re Hanks*, 2007 WL 60812 (Bankr.D.Utah 2007);

*In re Brady*, 361 B.R. 765, 770 (Bkrtcy.D.N.J. 2007); *In re Rezentes*, 2007 WL 988055, at *4 (Bankr.D.Haw. Apr. 2, 2007); *In re McGillis*, 2007 WL 1549071, *3 (Bkrtcy.W.D.Mich. 2007); *In re Tuss*, 360 B.R. 684, 701 (Bankr.D.Mont. 2007); *In re Alexander*, 344 B.R. 742, 752 (Bkrtcy.E.D.N.C. 2006); *In re Guzman*, 345 B.R. 640 (Bankr.E.D.Wis. 2006); *In re Kolb*, 2007 WL 960135, *8 (Bkrtcy.S.D.Ohio 2007); *In re Miller*, 361 B.R. 224 (Bankr.N.D.Ala. 2007); *In re Rotunda*, 349 B.R. 324, 331 (Bankr.N.D.N.Y. 2006); *In re Barr*, 341 B.R. 181 (Bankr.M.D.N.C. 2006); and *In re Farrar-Johnson*, 353 B.R. 224 (Bankr.N.D.Ill. 2006).

Admittedly, there is a great divide between those courts that embrace the reliance on historical figures to "project" forward the minimums required for compliance under § 1325(b)(1), and those courts that would rely on the anticipated net income set forth on bankruptcy Schedules I and J. While the detail of the explanation both for one position and against it need not be rehashed here, I simply conclude that Congress could have spoken no clearer than abandoning the anticipated income approach and selecting language that pegs projected current income on historical figures. The Objection of eCast to the reliance on historical figures in computing projected disposable income will be overruled.

With that disposition, I will turn to issues raised by the argument that the Debtors' expenses are not reasonably necessary to be expended on the support of the Debtors and their dependents.

In accordance with § 1325(b)(3), amounts reasonably necessary are determined in

accordance with subparagraphs (A) and (B) of § 707(b)(2).

The analysis begins by deciding whether the Debtors' median family income is less than the median family income for the state and household size. There appears to be no dispute that the Debtors' income exceeds the state median income for a household of 5 people. See Form B22C at Doc. # 1.

With regard to expenses, there is allowed those applicable monthly expense amounts that comport with National and Local Standards, together with the Debtors' actual monthly expenses, categorized as "Other Necessary Expenses" and identified by the Internal Revenue Service as such.

eCast has challenged the reasonableness of the following items:

1. The failure of the Debtors to include an anticipated tax refund in the calculations of income,

2. The expenditure of $193 monthly expense on personal care for the family,

3. The expenditure of $200 monthly on recreation, and

4. The reasonableness of automotive operating expenses, including insurance.

The personal health care expense allowance is a part of the National Standards and is allowed at a set amount regardless of amount expended. See IRM § 5.15.1.8 ¶ 2. That allowance would also include an amount for recreation, which is a miscellaneous component. The allowance is computed on family size and income level. See Form B22C.

Automobile expenses are computed using IRS Local Standards. The

transportation expense for a family with two or more cars is a fixed allowance of $393. That number is based strictly on the number of vehicles in the household and is a cap on the actual expense.

The only objection by eCast which is not mooted by my ruling that projected disposable income is based on the historical figures found on Official Form B22C and not on the prospective income set forth on Schedule I is the argument that the income figures have been understated by failing to include the income tax refund as income. In 2005, that refund was $1200. The Debtors estimate that in 2006, the refund would be somewhat smaller. Since this refund represents an overpayment of payroll taxes, I agree that the monthly payroll deduction should be reduced by $100 resulting in an increase in monthly disposable income on Form B22 C from $278.91 to $378.91. The monthly plan payment proposed is $560 which exceeds the minimum required even if I were to adjust the monthly disposable income upward as requested by eCast.

In summary, for the reasons indicated, the Objections by eCast to the Plan must fail.

The Objection of the Chapter 13 Trustee is rescheduled for hearing on

[m:\users\cathy\opinions\5-06-bk-51065_Bardo.wpd]     8

**Wednesday**, **October 10, 2007**, at **9:30** o'clock A.M. in Bankruptcy Courtroom No. 2, Max Rosenn United States Courthouse, 197 South Main Street, Wilkes-Barre, Pennsylvania.

My Order is attached.

Date: September 7, 2007 BY THE COURT,

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*